UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, AND 401(K) SAVINGS PLAN,<br><br>Plaintiffs,<br><br>-against-<br><br>VARSITY PLUMBING & HEATING INC., INTERNATIONAL FIDELITY INSURANCE COMPANY, AND HARCO NATIONAL INSURANCE COMPANY,<br><br>Defendants. | 24 CV<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to section 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and common-law bond principles, to recover delinquent employer contributions to a group of multiemployer employee benefit plans, to recover delinquent benefit contributions pursuant to a benefit bond and rider issued by International Fidelity Insurance Company and Harco National Insurance Company, respectively, and other related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because the Local 1 Funds (as defined below) reside or may be found in this district.

## THE PARTIES

4. Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Education Fund, and 401(k) Savings Plan (collectively, the "Local 1 Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c). The Local 1 Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Funds are administered at 50-02 Fifth Street, Second Floor, Long Island City, New York 11101.

5. Defendant Varsity Plumbing & Heating Inc. ("Varsity" or the "Company") is a domestic business corporation organized under the laws of the State of New York and duly authorized to conduct business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 602(5) and 1145, and was and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. Varsity maintains its principal place of business at 31-99 123rd Street, Flushing, New York 11354.

6. The New York Department of State Division of Corporations lists "The Corporation," with an address of 3199 123rd Street, Flushing, New York 11354, as the post office address to which the Secretary of State shall mail a copy of any process against the Company served upon the Secretary of State by personal delivery.

7. The New York Department of State Division of Corporations lists "Robert J Bellini," with an address of 31-99 123rd Street Flushing, New York, 11354, as the Chief Executive Officer of the Company.

8. Upon information and belief, Robert J. Bellini is also the president of the Company and resides at 24 Saratoga Street, Lido Beach, New York 11561.

9. Upon information and belief, Michael Lyons is the Chief Financial Officer of the Company and resides at 7 Amityville Street, Islip Terrance, New York 11752.

10. Defendant International Fidelity Insurance Company ("IFIC,") is a corporation incorporated under the laws of the State of New Jersey and authorized to do business within the insurance industry in the State of New York. IFIC has its principal place of business located at 702 Oberlin Road, Raleigh, North Carolina 27605.

11. Defendant Harco National Insurance Company ("Harco") is a corporation incorporated under the laws of the State of Illinois and authorized to do business within the insurance industry in the State of New York. Harco has its principal place of business located at 4200 Six Forks Road, Suite 1400, Raleigh, North Carolina 27609.

**STATEMENT OF FACTS**

*The Collective Bargaining Agreement*

12. At all relevant times, the Company was a party to, and/or manifested its intention to be bound by, a collective bargaining agreement, project labor agreement and/or participation agreement with the Union (the "CBA").

13. Under the CBA, employers agree "to be bound by the provisions of the Trust Agreements pertaining to Pension, (including the [UANPF],…[and the] Plumbers Local Union

No. 1 Welfare…Trade Education…401(k) Savings Plan and *any other established funds…*" (the "Trust Agreements") (emphasis added).

14. On December 31, 2019, the Additional Security Benefit Fund ("ASB-C Fund") merged into the Welfare Fund.

15. The Trust Agreements permit the Funds to establish policies, rules, and procedures for the purposes of collecting unpaid contributions to the various benefit funds.

16. Each Trust Agreement states that the assets of that plan include "sums of money that have been or will be paid or which are due and owing to the Funds by the Employers as required by the Collective Bargaining Agreements."

17. Pursuant to the Trust Agreements, the Local 1 Funds adopted a Policy for the Collection of Delinquent Fringe Benefit Employer Contributions (the "Fringe Benefit Collection Policy") and a Joint Policy for Collection of Delinquent Employee Contributions and Participant Amounts (the "401(k) Savings Plan Collection Policy," together with the Fringe Benefit Collection Policy, the "Collection Policies").

18. The CBA, Trust Agreements, and Collection Policies require the Company to make specified hourly contributions to the Funds, and to remit other specified amounts including Union dues withheld from its employees pay to the Funds in connection in connection with all plumbing work and other specified work performed on behalf of the Company within the five boroughs of the City of New York ("Covered Work").

19. Under the CBA, Trust Agreements, and Collection Policies, the Company is required to submit reports to the Funds detailing the number of hours of Covered Work performed by its employees ("remittance reports") as well as corresponding benefit contributions to the Funds no later than the 20th day of the month following the end of each calendar month.

20. Similarly, per the 401(k) Savings Plan Collection Policy, employers are required to remit 401(k) Salary Deferrals and the supporting remittance report within seven (7) business days after the end of the payroll period from which the amounts were deducted from the wages of the employee.

21. The CBA, Trust Agreements, and Collection Policies further require the Company to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with its required benefit fund contribution obligations under the CBA.

22. Under the documents and instruments governing the Local 1 Funds including their Trust Agreements and Collection Policies, employers whose contributions are delinquent are liable for the amount of delinquent contributions, interest thereon at an annual rate of ten percent (10%), liquidated damages of twenty percent (20%) of the principal amount due, attorneys' fees, audit fees, and other collection costs.

23. Similarly, under the 401(k) Collection Policy, employers who fail to remit deferrals to the Local 1 Funds "within seven (7) business days after the end of the payroll period from which the deferrals were made and deducted from the wages of the employees shall cause the employer to be liable for the delinquent deferrals, plus interest thereon calculated at the rate of ten percent (10%) per annum calculated from the due date and compounded annually. The employer shall also be liable for the greater of lost earnings or restoration profits, as defined by the Voluntary Fiduciary Correctio Program of the U.S. Department of labor, 65 Fed. Reg. 14164 (March 15, 2000), in which no event shall be less than the underpayment rate defined in the Internal Revenue Code section 6621(a)(2), and which shall be determined by application of the DOL VFCP Online

Calculator…The Board may also assess liquidated damages on the delinquent deferrals at the rate of twenty percent (20%) of the amount due."

*The Benefits Bond and Rider*

24. On or about July 13, 2020, IFIC issued a benefits bond No. HOIFSU0496301 in the penal sum of $200,000, guaranteeing payment of all benefits owed by the Company in connection with all Covered Work performed by its employees (the "Bond").

25. On or about July 14, 2020, IFIC issued a rider increasing the penal sum of the bond from $200,000 to $400,000 (the "2020 IFIC Rider").

26. On or about January 31, 2021, IFIC issued a rider modifying the penal sum of the bond from $200,000 to $283,500 (the "2021 IFIC Rider," together with the 2020 IFIC Rider, the "IFIC Riders").

27. By issuing the Bond and the IFIC Riders, IFIC assumed liability for the payment of all contributions owed by the Company in connection with Covered Work performed by the Company's employees up to the penal sum of the Bond/Riders.

28. On or about July 22, 2022 Harco issued a rider with respect to the IFIC Bond, increasing the penal sum from $283,500 to $333,500 (the "2022 Harco Rider").

29. On or about March 1, 2024, Harco issued a rider with respect to the IFIC Bond, increasing the penal sum of the Bond to $433,500 (the "2024 Harco Rider," together with the 2022 Harco Rider, the "Harco Riders") (the IFIC Riders and Harco Riders, collectively, the "Riders").

30. By issuing the Harco Riders, Harco assumed liability for the payment of all contributions owed by the Company in connection with Covered Work performed by the Company's employees up to $433,500.

*The Audit*

31. Pursuant to the CBA, Trust Agreements, and Collection Policies, the Funds conducted an audit of the Company covering the period June 1, 2018 through December 31, 2022 (the "Audit").

32. The Audit revealed that the Company failed to remit contributions in the principal amount of $404,684.29 to the Local 1 Funds.

33. The Audit also revealed that the Company failed to remit 401(k)/ASB-C deferrals of $44,894.79 and lost earnings of $9,112.07 to the Local 1 Funds.

34. The Local 1 Funds incurred audit costs of $30,575.35.

35. Despite due demand, the Audit remains unpaid.

36. Pursuant to the CBA, the documents and instruments governing the Funds, and Section 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185, the Company is liable to the Local 1 Funds for: (a) contributions of $404,684.29, 401(k)/ASB-C deferrals of $44,894.79, and lost earnings of $9,112.07 for the period June 1, 2018 through December 31, 2022 as revealed by the Audit; (b) interest on the unpaid contributions and 401(k)/ASB-C deferrals at an annual rate of ten percent (10%); (c) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions and 401(k)/ASB-C deferrals due and owing; and (d) all reasonable attorneys' fees, audit costs, and collections costs incurred by the Local 1 Funds.

### FIRST CLAIM FOR RELIEF AGAINST VARSITY
*Unpaid Contributions Under 29 U.S.C. § 1145*

37. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38. Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a

collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."

39. The CBA requires that the Company make contributions to Plaintiffs for all Covered Work it performs within the trade and geographical jurisdiction of the Union.

40. Pursuant to the Audit, the Company owes the Local 1 Funds benefit contributions in the amount of $404,684.29 for the period June 1, 2018 through December 31, 2022.

41. Pursuant to the CBA and ERISA sections 502(a)(3), 502(g)(2), and 515, 29 U.S.C. §§ 1132(a)(3), (g)(2) and 29 U.S.C. § 1145, the Company is liable to the Local 1 Funds for: (a) contributions of $404,684.29 for the period June 1, 2018 through December 31, 2022 as revealed by the Audit; (b) interest on the unpaid contributions at an annual rate of ten percent (10%); (c) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions due and owing; (d) audit costs of at least $30,575.35; (e) reasonable attorneys' fees and costs incurred by Local 1 Funds in this action; and (f) such other legal or equitable relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF AGAINST VARSITY**
*Violation of Collective Bargaining Agreement under 29 U.S.C. § 185*

42. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes the Plaintiffs, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

44. Varsity violated the terms of the CBA when it failed to make all contributions due and owing and remit all 401(k)/ASB-C deferrals for Covered Work revealed by the Audit for the period June 1, 2018 through December 31, 2022.

45. Varsity violated the terms of the CBA when it failed to remit contributions to the Funds at the appropriate rate(s) for the period June 1, 2018 through December 31, 2022.

46. As a result of Varsity's violations, Plaintiffs are entitled to damages and other equitable relief pursuant to section 301 of the LMRA, 29 U.S.C. § 185.

### THIRD CLAIM FOR RELIEF AGAINST IFIC AND HARCO
*Common Law Claim Against the Bond for Employer Contributions*

47. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48. IFIC issued a common-law bond to Varsity.

49. Harco issued a common-law bond to Varsity vis-a-vi the Harco Riders.

50. Pursuant to the common-law bonds, IFIC and Harco guaranteed the payment of benefits to Varsity's employees and thereby assumed joint and several liability with Varsity to pay any and all benefits due and owing as a result of Varsity's failure to pay benefits for Covered Work performed by its employees.

51. Varsity owes the Local 1 Funds contributions in the principal amount of $404,684.29 for the period June 1, 2018 through December 31, 2022.

52. Therefore, under the common-law bonds and pursuant to the principles of common-law suretyship, IFIC and Harco are required to make payment to the Plaintiffs for all contributions due and owing by Varsity, plus interest thereon up to the penal sum of the Bond.

### FOURTH CLAIM FOR RELIEF AGAINST IFIC AND HARCO
*Common Law Claim Against the Bond for Employee Contributions*

1. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

2. IFIC issued a common-law bond to Varsity.

3. Harco issued common-law bond to Varsity.

4.     Pursuant to the common-law bonds, IFIC and Harco guaranteed the payment of benefits to Varsity's employees and thereby assumed liability to pay any and all benefits due and owing as a result of Varsity's failure to pay such benefits for Covered Work.

5.     Varsity failed to remit employee deferrals to the 401(k) Savings Plan in connection with Covered Work performed by its employees for the period of June 1, 2018 through December 31, 2022 in the amount of $44,894.79.

6.     Accordingly, IFIC and Harco are liable for delinquent 401(k) deferrals.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for unpaid contributions and 401(k) salary deferrals, plus interest, lost earnings, liquidated damages, and audit costs, in connection with Covered Work performed by Varsity's employees for the period June 1, 2018 through December 31, 2022, together with such other and further relief as is just and proper.

Dated: New York, New York
       December 31, 2024

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:     */s/ Adrianna R. Grancio*
        Adrianna R. Grancio, Esq.
        40 Broad Street, 7th Floor
        New York, NY 10004
        Tel: (212) 943-9080
        agrancio@vandallp.com
        *Attorneys for Plaintiffs*